UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KONEPACHIT, | No. 2:16-cv-0454 JAM CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATION |
| DAVID DAVEY,[1] | |
| Respondent. | |

Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254.  On November 4, 2013, petitioner was convicted in Sacramento County of second degree robbery and battery.  He is serving a sentence of 16 years imprisonment. For the reasons set forth below, it is hereby recommended that his petition be denied.

I. Background

On direct appeal, the California Court of Appeal summarized the facts presented at trial as follows (pp. 2-4):[2]

> Bryan Brown became intoxicated while drinking with friends at his friend's apartment and at a bar.  He and his friends subsequently

---

[1] Warden Davey, the warden at petitioner's current place of incarceration, is hereby substituted as the respondent in this action.  See Rule 2, Rules Governing Section 2254 Cases.

[2] Respondent lodged the Court of Appeal opinion with the court on May 12, 2016.

1

went to a Denny's restaurant around 1:50 a.m. Defendant was at a table in the restaurant with three women and a Hispanic man.

Brown entered the men's restroom at the restaurant around 2:25 a.m. Restaurant video cameras recorded activity in the dining room but not in the restroom. The restroom was unoccupied when Brown entered, but defendant and the Hispanic man at his table soon moved toward the men's restroom about 40 seconds apart.

Brown was at the urinal and heard the door open, then shut, then open again. When Brown turned his head to look, he was struck on the side of the head. Brown fell against the bathroom stall divider and turned to face his attacker. A second man grabbed Brown and threw him into a toilet stall. Brown was hit two or three times in the head, fell to the ground, and was kneed or kicked in the ribs. One of the assailants got on Brown's back and repeatedly hit him in the back of his head.

The assailants went through Brown's pockets and then resumed the attack. Brown tried to get up, but one of the men yelled "stay down" and kicked Brown on the left side of his face. One of the men said "he's done" and the assailants left the bathroom. The assailants left the restaurant together; the women in their group also left.

Brown never lost consciousness but he did not get a good look at the faces of his assailants. He asked his friends if they had seen "those guys." Two of his friends rushed outside; one obtained a license plate number and called 911. The license plate number was assigned to a vehicle registered at the address where defendant lived. Defendant was arrested at his home at around 3:45 a.m. on May 25, 2013. His clothing matched that worn by one of the men in the Denny's video. Defendant had $793 in cash when he was arrested.

Brown did not realize anything was taken until the responding officer asked him whether anything was missing. He noticed that his wallet, cell phone, and portable cell phone charger were taken. Brown first thought he only had $5 in cash, but was reminded that two of his friends had given him $200 while at Denny's to pay their share of the tab at the Mix bar earlier that evening.

Brown was taken to the emergency room where he received five stitches for a one centimeter laceration under his right eye. His right eye was completely swollen shut and there was swelling around his left eye. The emergency room doctor described the injury to the right eye as significant. Brown told the doctor his pain level was an eight out of 10. He had contusions on his face consistent with being hit in the head. Several days later, Brown had bruising caused by the broken blood vessels under the eye. He did not sustain a skull fracture or concussion.

Defendant called a friend from the Sacramento County Main Jail on May 25, 2013, at around noon. He said the police had taken his money and the victim had little, if anything, in his pockets.

2

> Testifying on his own behalf, defendant said he went to the Denny's restaurant with a girl and had just met the Hispanic man seated next to him. Defendant paid the tab for the table. He went to the restroom, where he saw Brown and the Hispanic man talking trash to each other. Defendant said he went into the disabled access stall and heard the sounds of fighting.
>
> Defendant said he saw the Hispanic man on top of Brown, who was on all fours. Defendant was shocked but did not intervene because it was none of his business. The Hispanic man took something from Brown's back pocket. As defendant left, the Hispanic Man continued to punch Brown. As defendant walked to the front exit, he noticed the Hispanic man behind him. Defendant walked rapidly out of the restaurant because he had just witnessed a fight.
>
> The Hispanic man ran past defendant and threw something in a trash can. Defendant and his date got in his car and left. After dropping off his date, defendant went home.
>
> Defendant said he obtained the cash in his possession from his father after helping with construction work. He said his comment in jail about the content of Brown's pockets reflected his belief that the Hispanic man had taken everything from Brown's pockets.

## II. Standard For Habeas Corpus Relief

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).[3] Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)." It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

/////

---

[3] The court does not have jurisdiction over any claim arising under state law.

3

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Here, the last reasoned opinion was rendered by the California Court of Appeal on direct appeal.

When a state court rejects a federal claim without addressing the claim, a federal court presumes the claim was adjudicated on the merits, in which case § 2254(d) deference is applicable. Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). This presumption can be rebutted. Id.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at

/////

782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III. Arguments and Analysis

    A. Sufficiency Of Evidence For Robbery

In his first claim, petitioner argues that the evidence presented at trial is not sufficient under the Constitution to sustain his robbery conviction. Specifically, petitioner argues there was no evidence presented at trial that either he, or the Hispanic male referenced above, intended to steal Brown's property before Brown was physically attacked or during the attack.

This claim was addressed by the California Court of Appeal on direct appeal. First, the Court of Appeal identified the correct legal standard for Constitutional sufficiency of the evidence claims: "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court then went on to analyze petitioner's claim:

> Robbery is the taking of personal property from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property. (§ 211; *People v. Harris* (1994) 9 Cal.4th 407, 415.) To support a robbery conviction, the evidence must show that the intent to steal arose either before or during the commission of the act of force, otherwise the taking will at most constituted a theft. (*People v. Bolden* (2002) 29 Cal.4th 515, 556.)
>
> Defendant relies on Brown's trial testimony, noting that Brown said he did not realize he was missing any items until the police asked him if he was missing anything. Defendant also points to consistent testimony from the officer who initially interviewed Brown. Defendant concludes it is not clear when the property was taken from Brown.
>
> Defendant acknowledges that Brown told another officer in a later interview[4] that the men told him to stay down and then went through his pockets. According to defendant, however, if the theft occurred at that point, it would not prove that the intent to steal was formed prior to the assault. Defendant argues it is "equally likely that the intent to steal was formed when Mr. Brown was on the ground and after the assault had concluded."

---

[4] Brown's first interview with an officer was on the day of the incident, May 25, 2013. The second interview took place on June 6, 2013.

5

> But [Mr. Brown] told the officer the men resumed beating him after one of them went through his pockets. A robbery is not complete until the robber "has won his way to a place of temporary safety." (*People v. Carroll* (1970) 1 Cal.3d 581, 585; *People v. Fierro* (1991) 1 Cal.4th 173, 226.) Beating defendant after the property was taken could reasonably be construed as part of the robbery: an attempt to help the assailants escape before Brown could respond. Because the assailants took Brown's property between beatings, the property was taken during the application of force, providing the appropriate nexus to support the robbery conviction.
>
> Other evidence supports an inference that defendant formed the intent to steal before the use of force. Brown did not know defendant or interact with him or his associates before entering the restroom. Defendant was in the Denny's restaurant before Brown. While at the restaurant, but before Brown entered the restroom, Brown's friends gave Brown $200 for their share of the bar tab earlier that evening. The assailants entered the restroom soon after Brown entered, and Brown was attacked as he was turning his head to see who had entered the restroom. There is no evidence that the assailants had any other motive to follow a stranger into the restroom and attack him.
>
> In reviewing for sufficiency of the evidence, we must make every reasonable inference in support of the conviction. And if a fact could support both guilt and innocence, we must affirm the conviction. Here we conclude the robbery conviction is supported by substantial evidence.

After reviewing relevant Supreme Court authority, the decision of the California Court of Appeal, the arguments of the parties and the relevant portions of the record, the court finds that the Court of Appeal's decision with respect to petitioner's sufficiency of the evidence claim is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Furthermore, the Court of Appeal's decision is not based upon an unreasonable determination of the facts. For these reasons, petitioner is precluded from obtaining relief as to his sufficiency of evidence claim by 28 U.S.C. § 2254(d).

B. <u>Failure To Instruct On Theft</u>

In his second claim, petitioner asserts the trial court violated his right to due process under the Fourteenth Amendment by failing, sua sponte, to instruct jurors regarding the elements of theft, a lesser included offense of robbery. To date, the Supreme Court has never found that a judge in a non-death penalty case has any obligation to instruct jurors regarding a lesser included

offense if neither party has requested the instruction.  See Beck v. Alabama, 447 U.S. 625, 638 n. 14 (1980) (reserving the question of whether the Due Process Clause would ever require the giving of a lesser included offense instruction in a non-capital case).  Accordingly, the court cannot find that the Court of Appeal's rejection of this claim is contrary to, or involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Again, petitioner is precluded from obtaining relief by 28 U.S.C. § 2254(d).

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 15, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
kone0454.157